### R. AUGUSTA FEAGLES V. ELIZABETH TANNER ET AL.

1. MORTGAGES—NOTARY'S CERTIFICATE—PRIMA FACIE CASE.

The record or certified copy of a mortgage introduced in evidence makes a *prima facie* case that the instrument was in fact executed and acknowledg d as therein stated. The certificate of the notary that it was duly signed and acknowledged is not conclusive where fraud or forgery is established, but the certificate is given such weight that to overcome it, the evidence must be clear and convincing; a mere preponderance is not sufficient.

2. FORGERY—EVIDENCE SUFFICIENT TO OVERCOME NOTARY'S CERTIFICATE.

The testimony of a wife that the signature to a mortgage of her real estate is a forgery, corroborated by the fact that the handwriting is wholly unlike that in her signature to another instrument, admitted to be genuine, and bears a striking resemblance to the handwriting of her husband, who negotiated the loan, and by the testimony of one of the witnesses to the mortgage that her signature is also a forgery, which is also corroborrated by a comparison of handwriting, supported by the further fact that a witness representing the mortgagee is unable to identify the wife as the person who accompanied the husband when he returned the mortgage to the office signed and acknowledged, and, in the absence of any testimony on the part of the husband, or other evidence in support of the validity of the mortgage, is sufficient, under the foregoing rule, to overcome the certificate of acknowledgment of the notary, since deceased, and the mortgage should be declared void.

APPEAL.

HULL, J.

This action comes into this court on appeal from the judgment of the court of common pleas.

An action was commenced in the court of common pleas against Elizabeth Tanner and Samuel F. Tanner upon a promissory note for $500 and a mortgage which it was alleged was given to secure this note, the mortgage being signed or purporting to be signed by Samuel F. Tanner and Elizabeth Tanner, his wife who were the two original defendants in the action. The property covered by the mortgage was owned by Mrs. Tanner. Samuel F. Tanner has never filed any pleading in the case. Elizabeth Tanner filed an answer, in which she denied that she ever signed or executed either the note or the mortgage, or

that she ever acknowledged the mortgage. She, in short, charges in her defense and answer that the note and mortgage, so far as she is concerned, are fraudulent and forged. After the action was tried in the court of common pleas and appealed to this court, Elizabeth Tanner died. She was living and testified at the time the case was tried below, and her testimony was taken by a stenographer. After her death the case was revived as against Charles F. Watts, the administrator of Elizabeth Tanner, and Clara Vohlbush, a daughter of Samuel Tanner, and Mrs. Tanner, and Clara's husband were also made parties, Clara Vohlbush now being the owner of the property covered by the mortgage it having been devised to her by her mother.

The note was dated June 11, 1895. The mortgage bears the same date. The note and mortgage were made to Marietta M. Sutton, and soon after their execution they were assigned and endorsed without recourse to the plaintiff. The plaintiff, in fact, it is said, furnished the money which was loaned on the note and mortgage. So that the question to be decided here is whether or not this mortgage—no personal judgment is asked—is a forgery, so far as Mrs. Tanner is concerned. The issue is squarely made.

Testimony was offered by the plaintiff and in behalf of the defendants, and it is urged in behalf of the plaintiff that the evidence is insufficent under the law to warrant the court in holding that this mortgage is a forgery.

We understand the rule of law to be, in this state, that to warrant a court in so holding, the evidence must be clear and convincing. The record of the mortgage, or a certified copy of the mortgage, being introduced in evidence, makes a *prima facie* case that the instrument was in fact executed and acknowledged as therein set forth. The certificate of the notary that it was duly signed and acknowledged is not conclusive where fraud or forgery is established, but the certificate is given such weight that to overcome it, the evidence must be clear and convincing a mere preponderance is not sufficient. Whether the evidence offered here by the defense is of such character and of such high order as that, in the question to be determined.

The plaintiff in making out her case offered in evidence the record of the mortgage and the testimony of a witness by the name of D. C. Williams, whose testimony was taken in the court below, but who was not present at the trial in this court, but his testimony was read as given below. The loan was negotiated in the office of T. S. Merrill, and through him. The mortgage was executed, or purported to have been executed, before C. Weber, a notary public, who is dead, and was dead at the time of the trial below, so that we do not have his testimony. Mr. Merrill is also dead. Mr. Williams says that he had an office in the office of T. S. Merrill where this loan was negotiated, and says Mr. and Mrs. Tanner came to the office, and he says that they said they wanted to borrow some money. The description of the property was taken the office, and after they went out Mr. Merrill told the witness to draw the papers, and the witness drew the mortgage. Tanner came back and took the mortgage away, and afterwards came back with the note and mortgage apparently duly signed and executed and acknowledged by him and his wife, and the money, the $500, was paid to Tanner. After the witness had stated that he did not think Mrs. Tanner was in the office but once, he was asked by the court, "Did you know her before that?" and

he answers "No, sir." The court then asks Williams, "Do you see the lady in the court-room?" and he answers "I don't believe I would know her if I would see her, because I only saw her the one time, and I didn't really know until after she was gone." Then he was asked the follow-the question by Mr. Flickinger: "How do you know it was Mrs. Sam Tanner?" He answers: "I only know her from her being there, and Mr. Tanner said it was his wife." So that after all it appears from his testimony that he was not acquainted with Mrs. Tanner, and was unable to testify that the woman, whoever it was that was with Mr. Tanner, was his wife, for he knew nothing about that, he said, "except that Mr. Tanner said that it was his wife." Williams testifies further that certain payments of interest were made upon this note. The note drew interest at the rate of 8 per cent. payable semi-annually, $20 every six months. He testifies that the payments of interest were made by Mr. Tanner. He says that he wrote several letters addressed to Mr. and Mrs. Tanner in regard to the interest, and that the interest was due; that he deposited these in the post office; that they were not returned: but he says he never saw Mrs. Tanner during any of these times, and he never heard of or from her, or from any irregularity with regard to the transaction.

The plaintiff also called a witness by the name of Sutton, who simply testified to the giving of the check for the $500 that was loaned upon the note and mortgage; and having offered the note and the record of the mortgage and the mortgage itself, the plaintiff rested her case with the testimony that has been referred to.

Under the rule in this state, as has been stated, in order to overcome this testimony, the defense must establish the fraudulent and forged character of this mortgage by clear and convincing evidence. One of the names appearing upon the mortgage as a witness was that of Clara Tanner, written on the mortgage "Miss C. Tanner." She was a daughter of Mr. and Mrs. Tanner. Her name at the time of the trial in this court was Clara Vohlbush, she having since married. She was called as a witness by the defense, and testified positively that she did not sign this mortgage as a witness, that she did not see her mother sign it, and was not present, and knew nothing of the mortgage; that her signature was forged. A mortgage was put in evidence, which she did witness sometime before that, which was dated April 24, 1895,—the same year as the mortgage in controversy. On that mortgage her name is signed "Clara V. Tanner," and there is a very noticeable dissimilarity in the handwriting between the signature on that mortgage and the signature "Miss C, Tanner" upon the mortgage in dispute. She was asked to write her name when she was on the witness stand, on cross-examination; she wrote it twice on a piece of paper, and the two signatures so written were offered in evidence—one written "Miss C. Tanner," and the other "Clara V. Tanner." These signatures were written freely, and without any hesitation, apparently, or study, and they look very differently from the disputed signature. So we have the testimony of Miss Tanner, now Mrs. Volbush, positively swearing that her signature on this mortgage is not genuine, and the admittedly genuine signature, which apparently is very different from the disputed one, and in addition to that, the signatures of the witness made upon the witness stand in the presence of the court.

Feagles v. Tanner.

Mrs. Tanner's testimony as given in the court below was read upon the trial here. She testifies positively that the name Elizabeth Tanner upon this mortgage and note are not her signatures; that she was not acquainted with Mr. Merrill, through whom the loan was negotiated; that she never saw him—never had any business relations with him. She says she was acquainted with Mr. Weber, who was the notary whose signature is attached to the certificate. She does not say anything more on this subject. How well she was acquainted with him, or whether he knew her when he saw her, she did not state. She says she was acquainted with him. She says she did not acknowledge this mortgage before him—that she is positive of that. She in short pronounces this signature a forgery; denies that she signed the mortgage or note, or authorized them or either of them to be signed; in effect swears that she had no knowledge of the making or execution or acknowledgment of his mortgage or of this note; and that she received no part of the money derived as the proceeds of the loan, and knew nothing whatever about it.

The plaintiff in rebuttal, called as a witness Mr. William H. Chapman, who testified that he had an office in Mr. Merrill's office at the time this mortgage was executed; that he saw Mr. Tanner there, but that he never saw Mrs. Tanner in Merrill's office. By the testimony of a son-in-law of Mr. Weber—Mr. Austin—Mr. Weber's signature as a notary is proved; there is no dispute about that signature being genuine.

This, in brief, was the substance of the testimony offered upon the trial: the testimony of the plaintiff consisting practically of the record of the mortgage, and the certificate of the notary that Mrs. Tanner appeared before him on June 11, 1895, and acknowledged the signing of the mortgage to be her voluntary act and deed. Mr. Weber signing the mortgage as a witness; the defendants offering testimony tending to prove that the signature of one witness was forged, and the signature itself bearing evidence that it was not genuine when compared with the genuine signature; Mrs. Tanner testifying positively that she did not sign the mortgage, it being admitted that the money was paid to Tanner and not to Mrs. Tanner. There is no evidence that any of the money came into the hands of Mrs. Tanner, or was used for her benefit, and no positive testimony that she had any knowledge of the making of this note and mortgage, until shortly before the commencement of this action; the testimony of Mr. Williams, that he mailed letters addressed to Mrs. Tanner is evidence tending to show that she might have had knowledge of the mortgage, but she testifies that she never received any of the letters nor had any knowledge of them. By an examination of the signature of Mrs. Tanner as it appears upon this mortgage and note with that of her husband, and comparing it with an admittedly genuine signature attached to the mortgage of April 24, 1895, it is apparent to one who is not an expert that the disputed signature is very different in ts character from the admitted signature. No expert witnesses were called by either side, and the signatures were submitted to the court without the aid of any testimony of that character. Nor are we troubled by the conflict of such testimony, which often appears. But we have examined very carefully these signatures with the aid of a magnifying glass that was provided by counsel, and it is apparent, and we think it is clear, even without the aid of a glass, that the disputed signatures were not written by Mrs. Tanner. The whole trend and character are differ-

ent from those of the genuine signature; they bear rather a striking resemblance to the handwriting of Samuel Tanner, whose signature appears under the name of Elizabeth Tanner on the note and mortgage. It should be said in this connection that Samuel Tanner, who is practically charged here with either forging this signature or obtaining this money on a fraudulent mortgage, was not called as a witness by either party. Although, as state in argument, he was subpoenaed by the plaintiff, the defendants might have called Samuel Tanner as well as the plaintiff. Nevertheless, it does not add any strength to the case of the plaintiff that the person who is charged with forging this signature is present in the court room under subpoena by the plaintiff, and is not put upon the witness stand. He alone of all others knows, perhaps, at least of all others now living, whether this signature is genuine or not.

It is not necessary to go outside of this state to cite authorities upon the question here. In Baldwin v. Snowden, 11 Ohio St., 203, the Supreme Court held, as stated in the syllabus:

"A regular statutory certificate of the acknowledgment of a deed of conveyance, made by husband and wife, is, in the absence of fraud, conclusive evidence of the facts therein stated.

" The failure of the husband to disclose to his wife the character of a mortgage which she executed at his request, and in entire ignorance of its contents, the grantee not being present, and having no reason to suspect imposition, does not constitute such fraud as will enable her to contradict, by parol, the certificate of acknowledgment."

It appears from the syllabus in that case, as will be seen, that the wife actually signed the mortgage, but claimed that the character of the instrument that she was signing and executing was not explained to her, and that she signed it in entire ignorance of its contents. The court held that that was not sufficient to overcome the certificate of the notary. The judge in delivering the opinion uses language more emphatic, and goes farther than the syllabus of the case. He says on page 211:

" The certificate of acknowledgment is an essential part of the conveyance, and without it the title cannot pass. And we think it can no more be contradicted by parol than any other part of the deed. It is true, the deed may be impeached and set aside for fraud. But that fraud must be something more than a breach of the confidence reposed by one of the grantors in the other. Where the grantee does not participate in the fraud, and is not cognizant of it, nor of any circumstances which would put an honest and prudent man upon inquiry, and has acted on the faith of the conveyance, we apprehend it can not be set aside on the ground of fraud."

And he says at the bottom of page 212:

" We doubt whether a case can be found where the certificate of the magistrate has been allowed to be impeached, on the ground of fraud, without evidence charging the grantee with notice of the fraud or the officer taking it with complicity therein."

This is not in harmony with the syllabus of the case, or the later decisions.

In Williamson v. Carskadden, 36 Ohio St., 664, the rule in this state is very clearly stated. The syllabus of the case is:

" In an action to enforce a written instrument, in the form of a real estate mortgage, and purporting to have been executed and acknowledged as required by statute, an answer setting forth that the defendant had never acknowledged the execution of such instrument, is sufficient.

"In such action, where it appears that the delivery of such instrument was made by one of several persons who signed the same, it may be shown by the others that the delivery as to them was unauthorized and fraudulent.

And the court say, on page 665:

"In Pennsylvania, the officer taking the acknowledgment of a deed performs a judicial act, and in favor of *bona fide* purchasers, the certificate is conclusive. * * * In Ohio, 'the magistrate does not exercise judicial functions in taking such acknowledgment. * * * His act, though official, is purely ministerial.' Truman v. Lore, 14 Ohio St., 144, 151. Nevertheless, the certificate of such officer, where the grantor actually appeared before him, is, in the absence of fraud, conclusive evidence of the facts therein stated."

It will be observed that the Supreme Court say here, "The certificate of such officer, where the grantor actually appeared before him, is in the absence of fraud, conclusive evidence of the facts therein stated," citing Baldwin v. Snowden, *supra*. Continuing, the court say:

"The rigid enforcement of this rule is required for the security of titles and the repose of society, and, indeed, by every consideration of public policy. Hence, where the testimony to impeach a certificate is uncertain or unsatisfactory, a court should decline to interfere; but, according to the decided weight of authority, where fraud is clearly shown, the certificate of acknowledgment should be declared invalid."

This we understand to be the law in this state. There, of course, could be no greater fraud than forgery. The last case on this subject, is Ford v. Osborne, 45 Ohio St. 1, where a wife disputed the legality of a deed; and the court say in the syllabus:

"Where it is claimed by the wife that a deed, signed by her husband and herself as a conveyance of her lands; had not been acknowledged by her as it purports to have been, the burden is upon her to show the fact by clear and convincing proof; a mere preponderance of the evidence is not sufficient to support a finding contrary to the certificate of acknowledgment."

The wife, in that case, claimed that she signed a deed without any knowledge of the character of the paper that she was signing, through the undue influence of her husband; the Supreme Court reviewed the testimony in this case. The wife brought an action below to set aside this deed, and the court below found that the evidence was sufficient to set aside the deed. The only witnesses called by the plaintiff in the action below were the wife and her husband, and the court say:

"Therefore, when the plaintiff rested her case, it might well be questioned whether she would have been entitled to a decree if the defendant had introduced no evidence whatever. She had not called the notary. It was no answer to this, to say that she was not bound to call one who was, or might prove to be, an adverse witness; the failure to call him could not add to the strength of her case. It rested upon her own evidence and that of her husband—both directly interested in setting aside the deed."

They say further along on the same page:

"But the testimony of the husband was affected, not only by his interest, but also by his admitted turpitude. His evidence shows one of two things to be true; either he was guilty of perjury in the testimony

he gave at the trial, or he had been guilty of a felony in obtaining a large amount of money upon what he knew to be a fraudulent deed. It would be utterly unsafe to base any judgmnet upon the unsupported testimony of such a witness."

They then discuss the signature of Mrs. Osborn and the ink that was used, and finally conclude that the evidence was not of such a character as to be denominated "clear and convincing evidence," and not sufficient to warrant the court in setting aside this deed, and the cause was reversed on that ground. Chief Justice Owen, however, dissented from the opinion of the majority of the court. From these authorities, the rule, it seems to us, is very well established in Ohio that where the evidence is clear and convincing, that notwithstanding the certificate of the notary, the court will be warranted in setting aside a deed or mortgage and declaring it fraudulent or forged. But a mere preponderance is not sufficient.

The general rule might be stated as laid down in Jones on the Law of Real Property, in Conveyancing, vol. 2, sec. 1196. He says:

"The burden of proof is on those who assail the verity of the certificate, and it can be successfully impeached only by clear and convincing evidence that fraud or imposition was practiced, or that the deed was not executed by the grantor, when the issue is limited to the fact of execution."

"Clearly proven" does not mean exactly the same as "proven beyond reasonable doubt." In Farrer v. State, 2 Ohio St., 77, 78, this is touched upon by Judge Thurman, in an opinion where he says:

"'Clearly proved' and 'proved beyond a reasonable doubt,' have not, I think, been generally considered as convertible terms. The latter, if I am not mistaken, has usually been held to imply a higher degree of certainty than the former. If the preponderance of testimony is clearly on the side of insanity, the fact ought, in my judgment, to be considered as clearly proved, although there is a reasonable doubt of its existence."

After carefully considering the testimony offered by the parties to this case, the testimony of Mrs. Tanner, and of her daughter, who signed as a witness, and all the facts and circumstances as they have been stated here, in connection with the signatures themselves, we are of the opinion that the proof is clear and convincing that this note and mortgage, so far as Mrs. Tanner is concerned, were forged and are, therefore, fraudulent and void. A decree will therefore be entered accordingly.

Mrs. Tanner having died, her husband now has a dower interest in these premises which is subject to this mortgage and the amount of plaintiff's claim may be found and the same by virtue of this mortgage declared to be a lien on Samuel Tanner's unassigned dower interest in the property.

*K. A. Flickinger* and *G. W. Kinney*, for plaintiff.

*C. F. Watts* and *E. B. Southard*, for defendants.